UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

C2R Global Manufacturing, Inc.,  Case No. 18-30182-beh

    Debtor-in-possession.  Chapter 11

## DECISION AND ORDER ON AMENDED SECOND APPLICATION OF SPECIAL COUNSEL FOR INTERIM COMPENSATION

The matter before the Court is the amended second application of debtor's special counsel for patent and related matters, Quarles & Brady, for interim compensation under 11 U.S.C. § 331. For the reasons set out below, the Court will approve the request, and allow interim fees in the amount of $365,091.75 and expenses in the amount of $42,243.74, for a total of $407,335.49.

## JURISDICTION

The Court has jurisdiction over the issue before it pursuant to 28 U.S.C. § 1334. Court consideration of applications for compensation and reimbursement of expenses under 11 U.S.C. § 330 are core proceedings insofar as they concern the administration of the estate and are proceedings for the allowance of claims against the estate. 28 U.S.C. §§ 157(b)(2)(A), (B) and (O).

## FACTS AND PROCEDURAL HISTORY

Debtor C2R Global Manufacturing, Inc. filed a voluntary Chapter 11 petition on October 29, 2018. On January 10, 2019, the Court approved the employment of Quarles & Brady LLP, effective as of October 29, 2018, to act as special counsel on patent and related matters, general business matters and possible sale of the company. The request to employ and the related order identified by name and hourly billing rate six professionals who would provide such services to the debtor and its estate in connection with the Chapter 11 proceeding. Quarles & Brady's responsibilities are separate from those of the debtor's bankruptcy counsel.

On December 28, 2018, Verde Environmental Technologies, Inc. filed a proof of claim in the amount of $6,821,918.00. Its claim was based upon damages arising from a lawsuit it commenced against the debtor approximately seven months before the debtor initiated this bankruptcy case, in the United States District Court for the Eastern District of Wisconsin, Case No. 18-cv-423-pp. Verde's suit asserts claims of patent infringement and false advertising, and seeks monetary damages and injunctive relief. The debtor answered the complaint in district court, and objected to Verde's proof of claim in this Court, asserting a number of defenses including patent invalidity.

Verde moved for relief from stay, and the debtor and another creditor, POP-Solutions LLC, objected. The Court reviewed the briefing and heard oral arguments. Ultimately, the Court declined to grant relief from stay, and the parties together devised a schedule to permit resolution of the claim dispute. Patent infringement and validity issues are not typical fare for bankruptcy courts. The schedule devised by the Court and parties includes claim construction briefing and hearing, discovery and ultimately a trial on the infringement and validity issues themselves. To their credit, the parties already have made one attempt at mediation.

Quarles & Brady submitted its first interim application for fees and expenses on August 27, 2019, for the eight-month period from October 28, 2018 through June 30, 2019, for the amount of $133,901.30 ($130,464.50 in fees and $3,436.80 in expenses). No party objected to that application. The Court reviewed and approved it.[1]

Quarles & Brady submitted a second interim fee application on December 6, 2019, for the five-month period of July 1, 2019 through November 30, 2019, in the amount of $485,551.29 ($439,298.50 in fees and $46,252.79 in expenses). Clearly more activity related to the patent litigation occured in this timeframe. The debtor asked that the Court enter an order approving the application on December 31, 2019 so that the debtor could pay its special

---

[1] Due to a typographical error in the original application, the actual amount approved by the Court was $.25 less than that requested, or $133,901.05.

counsel by year end. The debtor asserted that, due to tax considerations, it would save approximately $100,000 by paying the Quarles firm before January 1, 2020, and so sought a shortened period of approval under Section 331 of the Code.

On December 13, 2019, creditor POP-Solutions filed an objection, asserting that the amount of fees and expenses sought in the second interim fee application would deplete over 75% of the debtor's current cash on hand. POP-Solutions objected to the "specter" that nearly all estate assets could go to a law firm, instead of being disbursed to creditors, of which POP is the second-largest. POP cited *In re Sapolin Paints, Inc.*, 38 B.R. 807 (E.D. N.Y. 1984), which considered the size of the debtor's estate as a factor in whether to allow fees under 11 U.S.C. § 330. POP expressed concern about the substantial expenditure of legal resources likely yet to occur in the patent claim litigation herein,[2] and also pointed to over $129,000 in billings by paralegals in the recent five-month period, at hourly rates of $255 and $270. POP asked the Court to make a downward adjustment, but offered no comparative rates in support of its argument.

On December 19, 2019, Quarles & Brady responded to POP's objection, describing the patent litigation as vital to the outcome of the debtor's bankruptcy, an outcome which should benefit creditors like POP. The firm's response noted that the extensive use of paralegals to handle the over 200,000 documents produced in the patent litigation actually reduced costs to the client. In addition, while maintaining that all fees were reasonable, and denying that the debtor was administratively insolvent, the firm agreed to reduce its requested fees by $20,000 as an accommodation to the debtor and to resolve an informal objection received from the United States Trustee's office related to a "limited number of lumped time entries." *See* Local Rule

---

[2] POP's objection did not bring in the fees of the debtor's bankruptcy counsel, Kerkman & Dunn, who incur fees monthly, participated in mediation, and anticipate filing a plan upon conclusion of the claim litigation.

2016(a)(2)(A) (requiring fee applications to state "the time spent on each service or task in tenths of an hour").

The Court held a hearing on December 23, 2019. During that hearing, the Court pointed to several requirements of its Local Rules, including the rule requiring a description of the background and experience of timekeepers, and the rule against billing for more than one timekeeper's time for any project, meeting, etc. without further justification. The Court discussed additional concerns with entries which appeared to reflect billing for clerical tasks, or not aimed at presentation to a bankruptcy court.

At the conclusion of the hearing, Quarles & Brady agreed to submit an amended fee application. It filed the amended application on December 27, 2019, with a substantial reduction in fees. No creditor has objected to that submission.

## DISCUSSION

The Bankruptcy Code authorizes reasonable compensation for actual, necessary services rendered by an attorney or paraprofessional. 11 U.S.C. § 330 (a)(1)(A). As the debtor and its counsel firms acknowledge, the Bankruptcy Code requires that the Court satisfy itself, regardless of whether any party has lodged an objection, that compensation sought from the estate is reasonable. *In re Harry Viner, Inc.*, 520 B.R. 268, 274 (Bankr. W.D. Wis. 2014); 11 U.S.C. § 330. Thus, the Court would have conducted a careful review of the Quarles firm's second interim fee application whether or not POP-Solutions objected. It is the confluence of POP's objection, the fact that the courthouse has been and will be closed for several days due to serial holidays, and the debtor's request for expedited resolution due to tax year-end considerations, that submission and review of the fee application has been somewhat compressed.

Based on the Court's review of the Quarles firm's amended second interim fee application, it appears that counsel has addressed, or attempted to address, the deficiencies the Court identified at the December 23 hearing. The

Court will address each of those deficiencies, and counsel's remedial actions, below.

1.  **Description of professionals' experience and background**

    POP-Solutions raised no objection to the quality of the legal services provided here. The debtor's bankruptcy counsel whole-heartedly endorsed them. Notably, however, our Local Rule 2016(a)(1) requires that all applications for compensation provide: "A list of all attorneys, professional, paraprofessional or other timekeepers performing services on the case along with a description of the experience, length of professional practice, and billing rate for each." This specification assures the Court that all services billed have been provided by one with sufficient skill and ability for the task. From time to time there are new professionals who appear in fee applications submitted to the bankruptcy court, particularly in the case of special counsel. These persons may not be familiar to creditors or the bankruptcy court, making compliance with Local Rule 2016(a)(1) all the more apt.

    In this case, Quarles & Brady's initial second interim application did not identify the titles held by its professionals, or provide a narrative description of each professional's experience and background. The Quarles firm remedied this lapse in its amended second interim fee application and supplied professional background information for all of its timekeepers.

2.  **Duplication of services**

    Local Rule 2016(a)(5) provides: "If the application seeks compensation for more than one timekeeper performing the same task, including when more than one professional attends a hearing or meeting or produces work product, the application must provide a justification for the use of multiple timekeepers." This Rule is consistent with caselaw, as noted in the applicant's amended submission. *See, e.g., In re Bennett Funding Group, Inc.*, 213 B.R. 234, 245-46 (Bankr. N.D.N.Y. 1997) (professionals are required to exercise billing judgment, and where possible, make efforts to reduce staffing on matters, while multiple lawyers may bill for their areas of specialty).

Compliance with this Local Rule was a focus of Quarles & Brady's amended second interim fee application, which resulted in a majority of the $54,206.75-fee-reduction, as well as some additional, descriptive justification for some time entries. A careful review of the amended submission satisfies the Court that where multiple timekeepers billed for the same deposition or document review, there was a meaningful division of labor.

**3.     Paralegal rates and clerical tasks**

Section 330(a)(1)(A) of the Code includes compensation of paraprofessionals because their work can reduce the cost of administering bankruptcy cases. *See in re Gvazdinskas*, No. 08-73105, 2010 WL 1433308, at *3 (Bankr. C.D. Ill. April 8, 2010), citing H.R. Rep. No. 595, 95th Congr., 1st. Sess. 329-30 (1977). A legal paraprofessional has obtained education or training by which he or she can perform certain substantive work delegated by the lawyer, and for which the lawyer remains ultimately responsible. *Id.* If such work is reasonable and necessary, it is compensable. Conversely, clerical tasks, whether performed by a lawyer or staff person, are charged to overhead and are not separately compensable. *Id. See In re Nelson*, No. 16-22089-beh, 2017 WL 449581, at *2 (Bankr. E.D. Wis. Feb. 1, 2017).

As noted earlier, POP-Solutions objected generally to the rates of paraprofessionals, but offered no comparative rate information in its written objection. At the December 23 hearing, counsel for POP acknowledged that some anecdotal information he obtained from other firms suggested that the Quarles firm rates could be reasonable for experienced paralegals. Indeed, the education and work experience provided in the amended second interim fee application supports that Ms. Hocker is an IP paraprofessional of more than two decades' experience, and is well-suited to assist in this document-intensive patent litigation. Ms. Vidal Schumm has more than a decade of similar experience. As a result, the Court finds no reason to reduce the rates charged by the two paralegals identified in POP's objection, Ms. Hocker and Ms. Vidal Schumm, for performing substantive legal work.

Reduction was appropriate, however, for itemized clerical tasks—*e.g.*, uploading, downloading, filing and effecting service of documents. In its amended fee application, the Quarles firm appears to have eliminated charges for much of the clerical work performed by either Ms. Hocker or Ms. Vidal Schumm, which is included in the $54,206.75 fee reduction.

**4.   Excessive/unreasonable time spent on certain tasks**

Part of the reduction of the paraprofessional charges in the amended second fee application were charges incurred for an extensive PowerPoint presentation to accompany counsel's argument at the claim construction hearing before the Court. Many of the slides in the PowerPoint presentation were illustrative of caselaw or embodiments from the arguments in the briefs or the patents themselves. Other slides were additional illustrative examples. In any event, while the presentation could be quite helpful for a lay jury, it is less so for a single judge undertaking a legal analysis.

In the amended second fee application, the time charged for Ms. Hocker's work on the PowerPoint presentation was reduced from 40 hours to 14 hours, and the 20 hours of attorney time spent on the presentation was virtually eliminated, resulting in a reduction of almost $14,000 in fees. The Court accepts this reduction as reflecting a reasonable amount of time spent on the task at hand.

**5.   Expenses for travel and meals**

The amended second fee application reflects other adjustments, common for bankruptcy work in this district. A lawyer's travel time might be compensated at his or her full hourly rate in general civil litigation, on an opportunity-cost theory, but in bankruptcy, where costs paid to the debtor's counsel reduce the estate assets ultimately available to creditors, the better approach is to allow travel costs at half the hourly rate, unless the lawyer is able to perform client work during the travel time. *In re Pettibone Corp.*, 74 B.R. 293, 299 (Bankr. N.D. Ill. 1987) (noting that "every dollar expended on legal fees results in a dollar less that is available for distribution to creditors"). The amended application reflects such an adjustment, relying primarily on

more recent caselaw citations[3] and the United States Trustee's Guidelines. *See Dixon v. Gluth (In re Gluth Bros. Constr.)*, Nos. 07-B-71375, 09-A-96131, 2011 WL 4344599, at *4 (Bankr. N.D. Ill., Sept. 14, 2011); *In re Bennett Funding Grp., Inc.*, 213 B.R. 234, 251 (Bankr. N.D.N.Y. 1997); *In re Unger & Assocs.*, 277 B.R. 694, 698 (Bankr. E.D. Tex. 2001); *In re Klarchek*, No. 10-bk-44866, 2015 WL 9306458, at *1 (Bankr. N.D. Ill. Dec. 18, 2015).

In addition, the cost of counsel's working meals, sometimes billed to the client in large civil matters, are not an expense item often to be borne by a debtor's creditors in the bankruptcy setting. *See, e.g., In re Rhoads*, No. 14BK17886, 2018 WL 6841357, at *1 (Bankr. N.D. Ill. Dec. 6, 2018) (noting that expenses for in-town travel and in-town meals are not reimbursable in the United States Bankruptcy Court for the Northern District of Illinois, absent an explanation of necessity that would benefit the bankruptcy estate); *see also In re Unger & Assocs., Inc.*, 277 B.R. 694, 698 n.4 (Bankr. E.D. Tex. 2001) (noting that *reasonable* costs for travel meals are allowable under the Local Rules of the United States Bankruptcy Court for the Eastern District of Texas, and disallowing unreasonable and excessive expenditures for prime rib, steak, and alcoholic beverages).

In the amended second fee application, the Quarles firm has eliminated charges for all meals. It appears that some of those meals may have been required due to travel to Minneapolis for depositions. In line with the practices of the courts cited above, the Court would have been willing to allow reasonable expenses for such travel meals; however, the descriptions provided—"Meal," followed by a date and sometimes a restaurant, without any further indication of what was purchased and for whom—lack the specificity for the Court to conclude that such expenses were incurred reasonably during travel, and

---

[3] Among the authority cited by the applicant is *In re Pine*, 705 F.2d 936 (7th Cir. 1983) (awarding fees for successful claim in bankruptcy court, district court and Court of Appeals under Truth in Lending Act). The *Pine* court's holding in allowing reasonable attorney's fees for prosecuting an appeal from the bankruptcy court's denial of an attorney-fee request is in question, at least as to allowance of fees for fee-defense litigation under 11 U.S.C. section 330. *See Baker Botts LLP v. Asarco LLC*, 135 S. Ct. 2158, 2168 (2015). It appears fees for travel time were awarded in *Pine*, under TILA.

therefore elimination of those expenses in the amended second fee application is proper. The Court is willing to consider properly supported, out-of-town meal expenses in future fee applications, if any.

## CONCLUSION

Debtors can feel fortunate when they are represented by highly skilled, knowledgeable counsel with deep experience in a complex field of law. Civil litigation clients may authorize some litigation expenses for broader strategies. But bankruptcy counsel and special counsel ought to confer, and consult the Local Rules, before incurring certain costs and submitting fee applications under the strictures of section 330. Reasonable time spent does not necessarily include all time actually expended. *See In re Chas. A. Stevens & Co.*, 105 B.R. 866, 870-71 (Bankr. N.D. Ill. 1989).

Based on the revisions made in the amended second interim fee application, the Court is willing to approve the Quarles firm's request. The services provided were actual and necessary, and the amount of compensation sought is reasonable.

## ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. The request for interim allowance for the Quarles Firm of fees in the amount of $365,091.75 and expenses in the amount of $42,243.74, for a total of $ 407,335.49, is approved.

2. The debtor is authorized and directed to pay the amounts owed to the Quarles Firm from its operating account on or before December 31, 2019.

3. The fees and expenses allowed are subject to a final review and recoupment if the Court finds it appropriate.

Dated: December 30, 2019

By the Court:

Beth E. Hanan
United States Bankruptcy Judge