IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

C2R Global Manufacturing, Inc.,        Case No. 18-30182-beh

Debtor.                                 Chapter 11

**DECISION AND ORDER ON (1) C2R'S REQUEST FOR PARTIAL SUMMARY JUDGMENT AS TO UNPLED ALLEGED FALSE STATEMENTS AND (2) C2R'S MOTION *IN LIMINE* TO EXCLUDE UNPLED ALLEGED FALSE STATEMENTS**

**I.    C2R's Request for Partial Summary Judgment in its Favor**

On September 9, 2020, Verde Environmental Technologies, Inc. moved for partial summary judgment on its Lanham Act claim as to the literal falsity of certain advertising statements made by C2R, which the parties have described as C2R's "numerical capacity" representations—statements that identify an approximate number of pills that C2R's Rx Destroyer products can hold.[1] In reciting its version of the undisputed facts, Verde also identified several other categories of statements C2R made in its advertising in conjunction with the numerical capacity claims:

- "1-2-3 Statements": Statements that reference disposing of medication in three steps (*see* Verde's SPMF ¶¶ 5–7);[2]

- "Two Inches Statements": Statements cautioning users not to fill the Rx Destroyer containers above two inches from the cap (*see* Verde's SPMF ¶¶ 8–9); and

- "Dosage Form Statements": Statements that reference the dosage forms the Rx Destroyer products can accommodate (*see* Verde's SPMF ¶¶ 10, 12, 13).

---

[1] The Court has addressed Verde's motion for partial summary judgment in a separate decision, which more fully lays out the facts underlying the parties' dispute. The Court will not restate those facts again here, unless relevant to the matters currently before the Court.

[2] "Verde's SPMF" means Verde's Statement of Proposed Material Facts, ECF Doc. No. 353-4.

C2R opposed Verde's motion for partial summary judgment on the numerical capacity claims, and also requested that the Court grant summary judgment in its favor as to the three additional categories of statements listed above (which, together, C2R calls the "newly accused" statements). *See* ECF Doc. No. 353-3, at 33 ("To the extent that Verde is basing its false advertising claim on the newly accused statements, partial summary judgment should be granted in C2R's favor."). C2R asserts that the Court may grant summary judgment in its favor, even though C2R did not cross-move for summary judgment, citing *Davis v. Milwaukee Cty.*, 225 F. Supp. 2d 967 (E.D. Wis. 2002) and *Goldstein v. Fidelity & Guar. Ins. Underwriters*, 86 F. 3d 749, 750–51 (7th Cir. 1996).

As for the substance of its request, C2R contends that summary judgment in its favor is warranted because Verde's new allegations are untimely: Verde did not identify the newly accused statements as a basis for its false advertising claims in its complaint or in response to contention interrogatories, and instead raised the allegations for the first time in summary judgment briefing. In addition, says C2R, Verde has not offered any evidence to establish that the newly accused statements are false.

In response, Verde first argues that C2R's request is untimely, because it was made after the Court's September 2, 2020 deadline for dispositive motions. Verde then points out that the cases on which C2R relies to support the procedural nature of its request—made in an opposition brief—do not apply in these circumstances. Those cases (*Davis* and *Goldstein*) "merely recognize that if the Court reviews evidence on issues submitted for summary judgment by the movant, but 'the law compels a judgment in favor of the non-movant, it may grant summary judgment in favor of the non-movant.'" ECF Doc. No. 284, at 14 (quoting *Davis*, 225 F. Supp. 2d at 970); *see also Goldstein,* 86 F.3d at 750–51 (holding that district court did not err in entering summary judgment *sua sponte* in favor of nonmovant where district court agreed that no genuine issues of material fact existed in the case, as movant conceded in filing motion

for summary judgment in its favor, but found that facts compelled judgment in favor of the nonmovant as a matter of law). Here, however, C2R's request for summary judgment on the newly accused statements goes *beyond* the scope of Verde's motion, which was limited to C2R's numerical capacity representations. *See* ECF Doc. No. 284, at 3 ("As stated, Verde is only moving for summary judgment on the issue of literal falsity with respect to C2R's capacity claims for its RxDestroyer products. At no point in Verde's motion did Verde request that the Court find any of C2R's many other statements in advertising are literally false."); *id.* at 14 ("C2R's request goes beyond the current issue and seeks summary judgment on the truth of statements not raised by Verde in its motion.").[3] As for the merits of the request, Verde says that C2R has failed to meet its evidentiary burden of showing there are no genuine disputes of material fact as to whether the newly accused statements are literally false, and therefore summary judgment is unwarranted.

      The Court agrees that C2R's request for partial summary judgment is untimely and procedurally improper. C2R made its request after the dispositive motion deadline, and in an opposition brief, rather than as a timely cross-motion for summary judgment. Although it is true, as C2R asserts, that courts have the power to enter summary judgment in favor of a nonmovant notwithstanding the lack of a cross-motion for summary judgment, *see* Fed. R. Civ. P. 56(f), "the grant of such power does not compel its exercise." *Tr. of Jartran, Inc. v. Winston & Strawn*, 208 B.R. 898, 901 (N.D. Ill. 1997). When a court considers granting summary judgment to a nonmovant, it must provide the party against whom judgment is to be entered notice of that possibility and a reasonable opportunity to respond. "This includes the chance to marshal evidence and argument in opposition to summary judgment, even where . . . the party has already sought and failed to obtain summary judgment in its

---

[3] As C2R points out, Verde's counsel appears to have misspoken during the oral arguments on Verde's motion for summary judgment, stating that that the "two inches" statements are capacity statements within the scope of Verde's partial summary judgment motion. *See* ECF Doc. No. 298 (audio of 11/10/2020 hearing, at 48:00–49:50, 2:02:30–2:04:00).

favor." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 603 (7th Cir. 2015) (district court erred in failing to give defendant the opportunity to present evidence, beyond that cited in its own unsuccessful motion for summary judgment, to show that there was a material dispute of fact on the issue the court found to be dispositive, before *sua sponte* entering summary judgment in favor of plaintiff).

This is not a case where the universe of facts relevant to the truth or falsity of the newly accused statements has been identified and agreed upon. *See id.* at 603–04 ("[T]here are cases in which the parties are in agreement (or it is otherwise clear) as to what the relevant facts are, and the only dispute is over how those facts are to be characterized. When such cases present claims as to which there is no right to a jury trial (or the party opposing summary judgment against whom summary judgment is contemplated has not asked for one), placing the judge in the role of factfinder, it may be appropriate for the court to resolve the characterization dispute on summary judgment notwithstanding the fact-bound nature of that dispute."). The evidence Verde presented in its motion for partial summary judgment focused solely on the alleged falsity of the numerical capacity representations. Verde mentioned the newly accused statements only briefly, in reciting its version of the relevant factual background. Although Verde had an opportunity to respond to C2R's request in its reply brief (and did), the Court is not required to consider C2R's request on the merits, particularly when it exceeds the scope of the issues presented in Verde's limited motion for partial summary judgment. *Cf. Jones v. Union Pacific R. Co.,* 302 F.3d 735, 740 (7th Cir. 2002) (entry of summary judgment in favor of nonmoving defendant was proper where plaintiff was on notice that the court might enter summary judgment against him in light of the defendant's request to treat its memorandum opposing summary judgment for plaintiff as a cross-motion for summary judgment *on the same issue,* and plaintiff had an opportunity to respond to the defendant's cross-motion

statement in his reply brief but chose not to do so, or to object to the defendant's request for summary judgment).

Because C2R's request was made after the deadline for dispositive motions and is not limited to the issues raised in Verde's motion, the Court will deny the request on procedural grounds, without reaching the merits of the parties' evidentiary arguments.

## II.     C2R's Motion *in Limine* to Exclude Alleged False Statements

For the same reasons identified in its request for summary judgment in its favor, C2R also asks the Court to preclude Verde from relying on the newly accused statements as independent bases of liability at trial. C2R asserts that Verde did not identify these allegedly false statements in either its proof of claim or its interrogatory responses, and that Verde's late assertion of new theories of liability based on these statements has prejudiced C2R. Verde disagrees, arguing first that its theories of liability based on these statements are not "new," and second, that C2R has not identified any specific prejudice it will suffer if these statements are introduced at trial.

To rule on C2R's motion *in limine*, the Court must examine (1) whether Verde put C2R on notice that it intended to pursue claims based on the newly accused statements (either in the complaint attached to its proof of claim or during discovery), and if not, (2) whether equity favors allowing Verde to rely on these statements as bases of liability at trial.

### A.     **Verde did not plead the newly accused statements as bases of liability in the complaint attached to its proof of claim.**

Verde asserts that it affirmatively alleged that the newly accused statements were false, pointing to the complaint attached to its proof of claim (*see* ECF Doc. No. 49, at 39–170), citing specifically ¶¶ 34 and 36, and exhibits C (at 3–4), D (at 3–4), and E. A review of the complaint and these exhibits, however, belies this assertion. In paragraphs 33–43 of Verde's complaint, Verde purports to describe "C2R's false, misleading, and deceptive advertising." Paragraph 34 quotes a statement from the former Q&A page of C2R's Rx

Destroyer website which represents that drugs cannot be abused, and are not retrievable, after they are placed in an Rx Destroyer container, while paragraph 36 quotes the numerical capacity representations on the former "How to Use" page of the website.[4] These statements, taken together (according to paragraph 38 of the complaint), falsely represent that the Rx Destroyer products can deactivate the stated capacity of pills. *See* Compl. ¶ 38 ("The statements and representations on the RxDestroyer Website that drugs are not retrievable after placing them in the Rx Destroyer™, and regarding the capacity of each RX Destroyer™ All-Purpose Product, suggest to consumers that each RxDestroyer™ All-Purpose Product can deactivate its stated capacity of pills. For example, C2R represents on the Rx Destroyer Website that the 4 ounce Rx Destroyer™ All-Purpose Product can deactivate approximately 50 pills, and the 16 ounce Rx Destroyer™ All-Purpose Product can deactivate approximately 300 pills.").

Verde goes on to explain why these pill-capacity representations are false: because, according to studies and experiments Verde conducted, the Rx Destroyer products cannot deactivate the number of pills advertised. *See* Compl. ¶¶ 39, 41 ("Studies using a variety of drugs consistently show that when 50 tablets of a drug are added to the 4 ounce Rx Destroyer™ All-Purpose Product and used as instructed, less than 40% of them are deactivated after 10 days. . . . Thus, on information and belief, C2R's statements and representations on the Rx Destroyer Website regarding the capacity of its RX Destroyer™ All-Purpose Products are false, deceptive, and misleading.").

Nowhere in the complaint does Verde identify specifically any of the newly accused statements, assert that those statements are false, or explain *why* those statements are false. In other words, Verde does not plead that any of the newly accused statements are false with the particularity required by Federal Rule of Civil Procedure 9(b). *See BenShot, LLC v. Lucky Shot USA LLC*,

---

[4] Paragraphs 35 and 37 likewise recount statements that advertise the capacity of the Rx Destroyer products on a per-pill basis.

No. 18-C-1716, 2019 WL 527829, at *3 (E.D. Wis. Feb. 11, 2019) ("The Seventh Circuit has applied Rule 9(b)'s heightened pleading requirement to Section 43(a) claims under the Lanham Act. . . . Under this heightened standard, a plaintiff must allege 'the who, what, when, where, and how' of the circumstances constituting the fraud.") (citing *Gensler v. Strabala*, 764 F.3d 735, 737 (7th Cir. 2014) (noting that the plaintiff, in bringing claim based on Section 43(a)(1)(A) of the Lanham Act, had "charge[d] [the defendant] with a form of fraud, so we would expect its complaint to allege with particularity the nature of the grievance—what [the defendant] said and why it is false") (citing Fed. R. Civ. P. 9(b))).[5]

### B. Verde did not identify the newly accused statements as bases of liability during discovery.

Verde also asserts that it identified its reliance on the newly accused statements in discovery—specifically, in response to C2R's Interrogatory No. 10, which asked Verde to "[i]dentify each statement by C2R which you contend is false, misleading, deceptive, or unfair and for each, explain how each identified misrepresentation is false or misleading and how it is false or how it is misleading."

Verde again is mistaken. In its initial answer to Interrogatory No. 10, Verde directed C2R to "at least the statements identified in paragraphs 34–37" of its complaint (which, as described above, concern C2R's numerical capacity representations), and disclosed that those statements were false "as explained in Paragraphs 38–41" of its complaint (which, also as described above, allege

---

[5] For this reason, Verde's belated attempt to incorporate the newly accused statements into its false advertising claim by mere reference to various exhibits attached to its complaint also fails. That the other three categories of statements happen to be included in some of the multi-page exhibits Verde attached to its complaint (such as Exhibits C and D—which Verde cited in the complaint specifically to support its *numerical capacity statement* allegations) is a far cry from alleging that those particular statements are false. *See, e.g., United States ex rel. Berkowitz v. Automation Aids*, No. 13 C 08185, 2017 WL 1036575, at *5 (N.D. Ill. Mar. 16, 2017), *aff'd sub nom. United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834 (7th Cir. 2018) ("[V]oluminous exhibits by themselves do not automatically satisfy Rule 9(b) and will not otherwise save a complaint that never arrives at specifics of the who, what, when, where, and how.").

falsity because, according to Verde, the Rx Destroyer products cannot deactivate the stated capacity of pills). Verde added that it would "produce non-privileged documents responsive to this Interrogatory."

Verde then supplemented its answer to Interrogatory No. 10 by identifying four documents, but did not provide any further explanation about the allegedly false statements contained therein: VERDE000163-167; VERDE000229-234; VERDE000235-238; and VERDE000239-242. The first document, VERDE000163-167, is the former "How to Use" website page that also was attached to Verde's complaint as Exhibit C and, as previously noted, was cited in the complaint to support Verde's allegations about C2R's numerical capacity representations. The mere disclosure of this document in Verde's supplemental interrogatory response would not reasonably have put C2R on notice that Verde believed *other* statements within that document were false. As for the other three documents cited above, Verde has not provided the Court with copies or otherwise indicated where those documents may be found in the record (if at all), and the Court will not guess at their contents.

Verde's second supplemental response to Interrogatory No. 10 likewise was insufficient to have put C2R on notice that Verde was pursuing claims for statements other than the numerical capacity representations. In its second supplemental answer, Verde identified two additional documents that it claimed "contain statements that are false or misleading, as explained in Paragraphs 38–41" of its complaint: WILLE117689 and WILLE110993. Both of these documents contain numerical capacity representations at the cited pages, consistent with the allegations in paragraphs 38–41 of the complaint. Notably, WILLE117689 is one page of a 33-page presentation, which includes slides that contain some of the newly accused statements—slides that Verde did not identify in its supplemental answer. *See* WILLE117686 (The All-Purpose formula is "[f]ormulated to dissolve all forms of non-hazardous medications," including "Pills, Tablets, Fentanyl Patches, Syringe Doses, Liquids, Suppositories."); WILLE117689 ("Types of Non-Hazardous Medication/ Pills, Liquids, Syringe lnjectables, Transdermal Patches, Fentanyl Lollipops,

Suppositories, and Lozenges"); WILLE117687 ("Reuse Until Full (2-inch from top)"); WILLE117688 (illustration of "drug disposal process" identifying steps as "Load Meds," "Agitate Bottle," "Store Bottle," and then "Discard Bottle" when "[c]ontents rise[] 2" from bottle top").

Verde also disclosed several documents in its second supplemental answer that, per Verde, "contain statements that are false or misleading in that they suggest to consumers that Dr. Henry Nowicki performed testing of the Rx Destroyer product even though he never actually performed such testing." Nothing in this statement reasonably would lead C2R to believe that Verde was pursuing a theory of liability based on any of the newly accused statements.[6]

Significantly, Verde's expert opinions focus solely on C2R's numerical capacity representations. *See* ECF Doc. No. 366, at 6–7 (noting that both David Worthen and William Fowler opine on only the accuracy of C2R's numerical capacity statements, and not on any of the newly accused statements).

Indeed, Verde itself has admitted—in briefing on a different motion *in limine*—that only the numerical capacity representations are at issue in this litigation. *See* ECF Doc. No. 309, at 6 ("Second, the 'DEA testing' involved only a liquid solution of methamphetamine, which is irrelevant to questions concerning the *pill capacity representations* at issue in this case.") (emphasis added); *cf.* ECF Doc. No. 341, at 2 (Verde asserting that it has alleged the falsity of "[s]tatements regarding liquid deactivation capacity," and therefore put C2R on notice that the "dosage form statements" are at issue) (emphasis in original).

---

[6] In its opposition brief, Verde directs the Court to one page of a multi-page email it cited in support of its supplemental response regarding Dr. Nowicki's testing—an email that also happens to contain some of the newly accused statements (the "2 inches statements" and the "dosage form statements")—in arguing that C2R has always known the newly accused statements are at issue. But C2R was entitled to rely on Verde's representations about its theory of falsity vis-à-vis this document (statements about Dr. Nowicki's "testing"). C2R's interrogatory asked Verde not only to identify each allegedly false statement, but also to "explain how each identified misrepresentation is false or misleading and how it is false or how it is misleading." Verde never singled out any of the newly accused statements in its responses.

In sum, neither Verde's complaint nor its discovery responses were sufficient to put C2R on notice that Verde intended to pursue theories of liability based on the newly accused statements.

### C. Equity does not favor allowing Verde to rely on the newly accused statements at trial.

The decision whether to preclude Verde from advancing unpled theories of liability at trial is a matter of judicial discretion, which must be guided by equitable principles. *See King v. Kramer*, 763 F.3d 635, 643 (7th Cir. 2014) ("[I]n examining whether the district court abused its discretion in granting [the defendant's] motion in limine [to preclude the plaintiff from amending the complaint or advancing a new legal theory at trial], we review the court's balancing of the equities to each of the parties . . . .").

Several factors weigh in favor of granting C2R's motion. First, Verde has offered no excuse or explanation for why it failed to include the newly accused statements in its complaint, to amend its discovery responses to identify the newly accused statements, or to seek leave to amend the complaint to add new factual allegations. *See Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 482 (7th Cir. 2019) ("Without a credible excuse for the delay [in raising its affirmative defense], the hospital's late invocation of the defense looks like a straight ambush of the plaintiff when it was too late for her to put together a comprehensive rebuttal.").

Second, Verde waited until after discovery was closed to assert these new theories of liability, "meaning both parties had already invested a good deal of time and money in the case on the legitimate expectation that they knew what the issues were. Allowing a last-minute [claim] that introduces such new factual and legal issues after discovery has closed raises the costs of litigation and allows the party that was at least negligent in failing to plead its [claim] to take unfair advantage of its opposing party." *Id.* (concluding that the district court abused its discretion in considering an affirmative defense raised for the first time after discovery closed and during summary judgment briefing). Verde questions what additional discovery C2R would need to conduct to defend

against these new allegations. *See* ECF Doc. No. 341, at 7 (". . . C2R does not describe what discovery it would have conducted *about its own statements in advertising.* Nor does C2R claim—let alone substantiate—any difficulty in addressing these statements at trial.") (emphasis in original). But C2R asserts that it would need to have its technical expert examine the newly accused statements (such as the "two inches" statements); depose Verde's experts regarding these statements and the basis for any opinions that they may have related to a theory of liability based on the newly accused false statements; and assess what effect, if any, these statements may have on consumer purchasing decisions and to account for that effect on any potential damages analysis. *See Kamal v. Eden Creamery, LLC*, No. 18-CV-1298 TWR (AGS), 2020 WL 7226177, at *8 (S.D. Cal. Dec. 8, 2020) (rejecting plaintiffs' argument that defendants would suffer no prejudice if complaint were amended to add new factual basis for liability because the new allegations were based on documents and testimony the defendants provided during discovery: "That Plaintiffs have all the discovery needed to prosecute their new theory, however, does not mean that Defendants have all of the discovery they need to defend against it. . . . Now that the discovery deadline has passed . . . allowing Plaintiff to amend would entail the delay and expense of reopening discovery.").

      Third, Verde's late disclosure of new theories of liability also prevented C2R from making fully informed risk-management decisions: "[H]ad Verde previously made clear that it thought the Newly Accused Statements were false, C2R could have assessed the validity of such claims and made a business decision regarding whether to remove the statements from its advertising to limit any potential exposure or limit any damages should it be found liable." ECF Doc. No. 366, at 13.

      Finally, delay in the conclusion of this litigation will result in (further) delay of C2R proposing and confirming a Chapter 11 plan of reorganization, and thus delay payment to C2R's creditors. *See* ECF Doc. No. 378, at 3 ("Resolution of the Verde claim is necessary to move the bankruptcy case

forward and to allow for filing and confirmation of a plan. That resolution will not occur until the conclusion of a trial.").

Based on the language of Verde's complaint and the way in which Verde has prosecuted this suit, C2R had no notice that Verde intended to pursue liability on any claims *other than* C2R's numerical capacity representations until after discovery closed and during summary judgment briefing.[7] At this late date, it would be unfair and prejudicial to C2R to allow Verde to argue that C2R violated the Lanham Act by making other categories of false statements. *See, e.g.*, *Aldridge v. Forest River, Inc.*, 635 F.3d 870, 873, 875 (7th Cir. 2011) (affirming trial court's grant of a motion *in limine* excluding a new theory of liability because "allowing the case to be tried in a different fashion would be tantamount to changing the theory of the case at the eleventh hour"; the trial court did not abuse its discretion because its ruling was "consistent with the nature of the litigation from the beginning of the case and it prevented surprise to the defendants regarding the nature of the case that they had been defending throughout the litigation"); *Mikulski v. Green*, No. 17-CV-820-PP, 2018 WL 4603283, at *6 (E.D. Wis. Sept. 25, 2018) (affirming bankruptcy court's exclusion of evidence on theory of liability not raised in the complaint and denial of plaintiff's motion for a continuance of trial and leave to amend the complaint to add new factual allegations). To be clear, this conclusion does not prevent Verde from introducing *evidence* of the newly accused statements

---

[7] Verde also has filed an adversary complaint against C2R alleging the same Lanham Act violations, but seeking a permanent injunction rather than a determination of money damages. *See* Adv. No. 20-02028. On May 27–28, 2020, the Court held a hearing on Verde's motion for a preliminary injunction in that adversary proceeding. The evidence Verde adduced at the hearing focused on the truth or falsity of C2R's numerical capacity statements, in keeping with the allegations in Verde's adversary complaint. At the time of the hearing, however, C2R had removed those particular statements from its website. In opening and closing statements, Verde's counsel argued (for the first time) that C2R's website nevertheless still contained false statements, because "C2R is still representing that you can fill these products to the brim" and that the medication will be adsorbed by the activated carbon. *See, e.g.*, Adv. No. 20-02028, ECF Doc. No. 130, at 9. Arguably this was some notice to C2R before summary judgment briefing that Verde might seek judgment on those filling instruction or disposal instruction statements. But, notwithstanding other reasoning above, that hearing took place after the close of fact discovery (March 23, 2020) and the deadline for opening expert reports (April 13, 2020) and simply came too late.

at trial, or from arguing that some or all of the newly accused statements give context to its argument on the falsity of the originally accused statements.

### ORDER

For the foregoing reasons,

IT IS THEREFORE ORDERED that C2R's request for partial summary judgment in its favor as to the alleged falsity of the newly accused statements is DENIED.

IT IS FURTHER ORDERED that C2R's motion *in limine* to preclude Verde from relying on the newly accused statements as independent bases of liability at trial is GRANTED.

Dated: March 30, 2021

By the Court:

Beth E. Hanan
United States Bankruptcy Judge