IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

C2R Global Manufacturing, Inc.,          Case No. 18-30182-beh

Debtor.          Chapter 11

**DECISION AND ORDER ON (1) C2R'S MOTION TO EXCLUDE DONALD GOROWSKY'S OPINIONS ON C2R'S STATE OF MIND AND (2) VERDE'S MOTION TO EXCLUDE CERTAIN EXPERT OPINIONS OF THOMAS W. BRITVEN**

Both Verde Environmental Technologies, Inc. and C2R intend to call expert witnesses to testify on the issue of damages in connection with Verde's Lanham Act claim against C2R. Each party has moved to exclude the testimony of the other's witness, on different grounds. For the reasons that follow, the Court will grant C2R's motion to exclude certain testimony from Verde's expert witness, Donald Gorowksy, and will grant in part and deny in part Verde's motion to exclude certain testimony from C2R's expert witness, Thomas Britven.

## I.    C2R's Motion to Exclude Gorowksy's Opinion on C2R's State of Mind

Verde intends to call Donald Gorowsky as an expert witness to testify in support of Verde's claim for damages. Gorowsky is a Certified Public Accountant and holds a B.S.B.A. in accounting, a J.D. degree, a Certificate in Management Accounting and a Certificate in Financial Forensics. He is the co-founder and shareholder of the professional consulting firm where he works, and has more than 40 years of experience in accounting, general management, and financial consulting.

Gorowsky offers three opinions regarding the potential damages available to Verde under 15 U.S.C. § 1117(a),[1] based on (1) C2R's profits from the sale of its Rx Destroyer products, (2) C2R's alleged unjust enrichment from sales to common customers with Verde, and (3) Verde's alleged lost profits attributable to sales diverted from those common customers. In formulating these opinions, Gorowsky assumed that Verde would be able to prove C2R's liability for false advertising under the Lanham Act. *See* ECF Doc. No. 377-1 ("Piery Decl. Ex. D"), at 5 ("For purposes of my analysis, I have assumed that Verde will be able to prove liability on its underlying theories. This assumption is a necessary predicate for my opinions on damages."). Although not expressed as part of his three identified damages opinions, Gorowsky also makes the following statements in his report:

- "I understand there is considerable evidence in this case record that C2R knowingly falsely advertised the deactivation capacity of its Rx Destroyer products, and that such false advertising resulted in harm to Verde." Piery Decl. Ex. D, at 11.
- "Based on the evidence in the record summarized above and to be presented at trial, it is apparent that C2R knowingly sold falsely advertised Rx Destroyer products." *Id.*

In light of these statements, C2R has moved to preclude Gorowsky from offering any expert opinions on C2R's state of mind—specifically, that C2R's alleged false advertising was done knowingly or willfully.

Before delving into the merits of the motion, the Court must make a preliminary point. It is unclear from the record whether Gorowsky does, in fact,

---

[1] 15 U.S.C. § 1117(a) provides, in relevant part: "When a . . . violation under section 1125(a) or (d) of this title . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. . . . . In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. . . ."

intend to offer any testimony—opinion or otherwise—about C2R's alleged knowledge of any false advertising. According to Verde's response brief, "Gorowsky does not intend to offer his own opinions on C2R's state of mind," and therefore "C2R's purported concerns about alleged state-of-mind opinions are unfounded." ECF Doc. No. 336, at 2. From this concession, one would expect the matter to be resolved, with Verde agreeing to limit Gorowsky's testimony as C2R has proposed. Instead, Verde curiously objects to the motion, which has prompted C2R to ask for clarity. *See* ECF Doc. No. 365, at 2 ("The recent statements from Verde and Gorowsky make it seem that this motion is unnecessary, yet Verde is opposing the motion . . . and Gorowsky's expert report includes statements regarding C2R's state of mind."). To resolve any lingering doubts and assist the parties in preparing for trial, the Court therefore will address the substance of the parties' arguments and consider whether Gorowsky may (if he intends to) offer any testimony about C2R's state of mind at trial.

      C2R argues that Gorowsky should be precluded from offering any opinions on C2R's state of mind because (1) Gorowsky is unqualified to do so, and (2) his opinions merely restate factual evidence, which is unhelpful and a waste of judicial resources. The Court agrees.

      On the issue of qualifications, it reasonably cannot be questioned that, whatever Gorowsky's education and experience in calculating damages, it does not qualify him to opine on whether C2R acted knowingly or intentionally. *See, e.g.*, *Klaczak v. Consol. Med. Transp. Inc.*, No. 96 C 6502, 2005 WL 1564981, at \*10 (N.D. Ill. May 26, 2005) (precluding expert from testifying as to the defendants' states of mind—specifically, that they acted knowingly or willfully— because the expert was not "any more qualified than the average juror to make such a determination") (collecting cases); *see also DePaepe v. General Motors Corp.,* 141 F.3d 715, 720 (7th Cir.1998) (trial court erred by allowing engineering expert to testify as to why General Motors had reduced the amount of padding in its automobile sun visors; expert "lacked any scientific basis for

an opinion about the motives of GM's designers."). "No witness, expert or otherwise, can appropriately testify regarding another person's or entity's intent."*Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, No. 15 C 1067, 2019 WL 5206273, at *1 (N.D. Ill. Mar. 13, 2019).

For similar reasons, Gorowsky's opinion on whether C2R acted knowingly will not assist the trier of fact (the Court), meaning it is not relevant. *See Aponte v. City of Chicago*, No. 09 C 8082, 2011 WL 1838773, at *2 (N.D. Ill. May 12, 2011) ("[E]xpert testimony does not assist the trier of fact when the jury is able to evaluate the same evidence and is capable of drawing its own conclusions without the introduction of a proffered expert's testimony.") (internal quotation marks omitted); *Klaczak*, 2005 WL 1564981, at *8 ("[P]roffered expert assertions about another's subjective intent or knowledge are not helpful to the jury, which is equally if not much better suited to make these assessments than the parties' competing paid expert.").

In its response brief, Verde does not address these problems head-on, but instead misdirects its attention at strawmen arguments. Verde first contends that the motion should be denied because Gorowsky is allowed to assume liability for purposes of his damages opinions, and therefore he may testify "about his assumptions that C2R falsely advertised its products, which is a factual predicate to his damages calculations." ECF Doc. No. 336, at 1. *See also id.* at 1–2 (". . . Gorowsky appropriately relied on an assumption that C2R engaged in false advertising in order to reach the issue of damages. . . . Furthermore, Gorowsky's testimony is proper because he is not seeking to opine that his liability assumptions are in fact true. Indeed, Gorowsky expressly states that he seeks to opine only on what the damages should be if the Court separately finds liability."). Verde next argues that the motion should be denied because Gorowsky's assumptions can be tested at trial. *Id.* at 4 ("C2R will have the opportunity to test at trial Gorowsky's assumptions that C2R engaged in false advertising. There is therefore no basis to exclude Gorowsky's assumptions or his opinions based on those assumptions.").

But C2R is not asking the Court to preclude Gorowsky from testifying that he assumed C2R's liability under the Lanham Act. Its motion focuses on a narrow issue—testimony concerning C2R's *state of mind* in allegedly incurring such liability. *See* ECF Doc. No. 365, at 2 ("C2R is not seeking to generally exclude Gorowsky's testimony regarding the assumptions Gorowsky made in reaching his financial calculations. Instead, C2R seeks to limit Gorowsky's testimony regarding whether C2R's alleged false advertising was done knowingly or assumed to be done knowingly."). Gorowsky's assumption of intent—something Verde fails to address in its response brief—is not a necessary predicate to an assumption of liability under the Lanham Act. Moreover, the Court fails to see how Gorowsky's assumptions about C2R's state of mind are relevant to his damages opinions—in other words, that Gorowsky's calculations of C2R's profits or Verde's losses would have been different if Gorowsky had assumed that C2R engaged in false advertising unintentionally, rather than knowingly.

Verde has not convinced the Court that testimony from Gorowsky about C2R's state of mind would assist the Court in understanding the evidence or determining a fact in issue. To the extent that C2R's state of mind may be relevant in determining whether equitable remedies, such as disgorgement of profits, are appropriate, the Court is capable of assessing the evidence and making the required determinations on its own. For these reasons, the Court will grant C2R's motion to preclude Mr. Gorowsky from offering testimony—whether in the form of his own opinions, or a recitation of evidence supporting any assumptions he has made about intent—that C2R's alleged false advertising was done *knowingly* (or with any other state of mind).

## II. Verde's Motion to Exclude Certain Opinions of Britven

C2R intends to call Thomas Britven as an expert witness at trial. Britven has a B.B.A. in accounting, is a Certified Public Accountant, Certified Fraud Examiner, and Certified Valuation Analyst (among other things), and is the president of a professional consulting firm that offers services including

litigation consulting. Britven proposes to offer opinions on damages; specifically, he was asked to "assume liability and to analyze and opine as to appropriate economic remedy and damages due Verde, if any, relating to Verde's asserted claims . . . regarding C2R's alleged false advertising relating to the capacity of C2R's Rx Destroyer products," and to assess and comment on Gorowsky's expert report. ECF Doc. No. 373-1 ("Britven Report"), ¶ 3.

Verde attacks many of Britven's opinions on the basis of qualifications, reliability, or both. In its motion to exclude Britven's testimony, Verde makes four primary arguments: (1) Britven is not qualified to offer opinions on consumer purchasing behavior or causation; (2) Britven's opinions based solely on online product reviews and his interview with C2R's sales consultant (Ms. Miller) are founded on unreliable evidence and therefore inadmissible; (3) Britven should not be allowed to offer his "cost-savings" damages calculations because his approach is inconsistent with the applicable legal standards; and (4) Britven is not qualified to opine on the appropriate legal standards.

### A. Testimony as to causation

A large portion of Britven's report focuses on his opinion that Verde has failed to prove a causal link between C2R's advertisements and any injury suffered by Verde. *See* Britven Report, ¶¶ 45–71, 92, and 96–104. To reach this overall opinion on causation, Britven first draws several supporting conclusions, including the following:

- Verde and C2R service different marketplace segments and have different customers (*id.* at ¶¶ 49–52 and 96–102);

- Container capacity does not appear to be a significant purchase driver of the subject products (*id.* at ¶¶ 53–57 and 103–104);

- Verde's claims are contradicted by the Rx Destroyer's widespread customer satisfaction (*id.* at ¶¶ 58–61);

- C2R's removal of the subject capacity statements from its website suggests that the advertising was not substantially contributing to sales of the Rx Destroyer (*id.* at ¶¶ 62–63); and

- The nature of use of Rx Destroyer products varies by customer (*id.* at ¶¶ 65–71).

Verde is correct that many of these supporting opinions fall outside the scope of Britven's expertise. As noted above, Britven's opinions are based on his education, experience and training in business, finance, valuation, and damages matters—not in the drug disposal and deactivation product industry, or in consumer perceptions or advertising. Britven therefore has no independent basis to testify about, for example: (1) the types and characteristics of the markets and customers that Verde and C2R serve; (2) how customers use C2R's and Verde's products; (3) factors that customers consider in purchasing drug disposal and deactivation products; and (4) whether C2R's capacity statements contributed (or were material) to the sales of its Rx Destroyer products.

C2R appears to suggest that Britven is qualified to offer such opinions as long as he bases them, at least in part, on his review of financial data. *See* ECF Doc. No. 344, at 18 ("Britven derived his analysis and opinion [that Verde and C2R serve different marketplace segments] from, among other things, his review of C2R's and Verde's historical sales data that shows there was no overlap between the top ten customers of Verde and C2R between 2015 and 2019. Britven's opinion was also based on a review of Verde's and C2R's sales records and the fact that their [sic] differing target markets and revenue sources. Britven's experience, education, and qualifications enable him to make such assessments as it involves a review and analysis of financial records—something that a CPA is well suited to perform.") (citations omitted).

This argument suffers from two weaknesses. First, while Britven may be "well-suited" to analyze financial records as a CPA, the majority of his causation-related opinions do not appear to involve any financial analysis. For example, Britven reaches the conclusion that product capacity is not a significant purchase-driver based on his review of (1) deposition testimony and (2) (non-financial) documents produced in discovery, such as emails between Verde and one of its customers, and a 2016 study conducted by Verde. Britven

opines that customers are satisfied with the Rx Destroyer products because (1) Ms. Miller told him customer feedback has been positive; (2) reviews for the product on Amazon.com are positive; and (3) in his opinion, it is not likely that "hospitals are blindly purchasing a product that is not performing as advertised without noticing, or that hospitals are willfully using a product known to be leaving activated drugs for disposal and risking the associated fines." Britven Report, ¶ 59. Similarly, Britven's opinions on how customers use Rx Destroyer containers (and whether they regularly are filled to capacity) are based solely on what others have told him, or what he has read in articles or online reviews. None of this testimony involves the assessment of financial records or reflects the application of Britven's financial expertise.

Second, as for Britven's "market segment" opinion, C2R overstates the extent to which Britven relies on his review of financial data to reach his conclusion. An analysis of the parties' records, alone, might provide a basis for Britven to identify any overlapping customers and quantify what products were sold to whom, for how much, and when. But they cannot establish, or provide a basis for Britven to opine, that any of those customers are part of the same market segment, or that Verde's and C2R's products do or do not compete in those markets. Britven's opinion on this particular point appears to be derived from his interview with Ms. Miller and deposition testimony about the parties' sales channels and typical use of the products by certain kinds of customers.

In sum, although it may be true, as C2R asserts, that "Britven is more than just the simple accountant Verde attempts to portray him as," ECF Doc. No. 344, at 17, whatever additional experience or credentials Britven may have do not qualify him to offer expert opinions about the drug disposal and deactivation industry or consumer behavior or perceptions. As one district court aptly has explained, a damages expert in a false advertising case cannot become qualified to opine on causation simply by reviewing discovery materials (and then regurgitating that information):

> In a case such as this one, where the question is whether a party's false advertising caused the opposing party to lose sales, the issue of

causation seems to depend on an assessment of the particular facts of the case, which does not require specialized knowledge possessed by an expert. But even if it were possible for a person with pertinent expertise in a particular industry, or a person with knowledge of how consumers respond to advertising in making purchasing decisions, to provide useful assistance to a jury on the issue of causation, a person with no such expertise cannot qualify as an expert on what causes customers in that industry to make purchasing decisions simply by reading deposition testimony and documents in a case and then telling the jury that the deposition testimony and documents show that the conduct at issue did not cause the plaintiff's loss.

*Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*, No. 2:15-CV-512-WCB, 2017 WL 1319553, at *9 (E.D. Tex. Apr. 10, 2017).

These same limitations apply with equal force to Britven's criticism of Gorowsky's expert report—specifically, in faulting Gorowsky for failing to establish a causal nexus between C2R's alleged false advertising and Verde's alleged harm. While Britven may point out that Gorowsky has assumed causation (as well as any attendant circumstances, such as marketplace competition or product use), and whether any evidence introduced at trial contradicts those assumptions, he may not "put the imprimatur of h[is] expertise on that evidence by stating as a fact" that, for example, C2R's and Verde's products are used differently and do not compete for the same customers. *Id.* at *11.

In short, to the extent that Britven intends to offer substantive testimony on issues of causation outside of his analysis of financial data, such testimony would exceed his area of expertise and be inadmissible as expert testimony. As a result, outside of the reasonable conclusions derived from financial data, Britven will not be allowed to offer expert opinions on:

1. The drug disposal and deactivation product market, including whether (or how) it is segmented, and what parties compete with what products in which markets—at least to the extent Britven's testimony is not rooted in his review of financial details;

2. How consumers use Verde's or C2R's products;

3. Factors relevant to the purchasing decisions of consumers in the drug disposal and deactivation product market;

4. Whether C2R's products work as advertised or to the satisfaction of consumers; and

5. Whether consumers would or would not purchase Verde's products if C2R were not in the market, or if C2R did not advertise its products using the allegedly false capacity statements.

This is not to say that the testimony or evidence on which Britven relies in support of his opinions above will not be admissible at trial—only that Britven cannot introduce such evidence through his own opinions.[2]

### B.  Opinions on legal standards

Verde's remaining challenges concern testimony that Verde claims is either inconsistent with the applicable legal standard, or purports to opine on the appropriate legal standard.

For example, in criticizing Gorowsky's lost profits analysis, Britven makes statements about the proper method for calculating damages. *See, e.g.*, Britven Report, ¶ 127 ("A proper lost profits analysis must address certain criteria.") (citing *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978) and *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1579 (Fed. Cir. 1989)). The Court agrees that Britven cannot offer opinions on what legal standards should apply in this case. *See Boltex Mfg. Co., L.P. v. Ulma Piping USA Corp.*, No. 4:17-CV-1400, 2019 WL 2716313, at *1 (S.D. Tex. June 28, 2019) ("Neither Britven[3] nor any other individual (absent extraordinary and currently unforeseen circumstances) will be allowed to offer testimony about the law. This Court, with the appropriate input from the parties, will decide what law controls this case . . . ."). The Court therefore will grant Verde's

---

[2] To the extent that Verde has argued for exclusion of Britven's opinions that rely on (1) reviews from Amazon.com and (2) his interview with Ms. Miller, on the ground that such sources are unreliable and do not constitute sufficient facts or data on which Britven could reasonably rely, *see* Fed. R. Evid. 702, that particular objection appears to have become moot by the Court's determination that Britven is not qualified to opine on causation, at least based on his review of such evidence.

[3] In *Boltex*, Britven also was the subject of a motion to exclude his testimony in a Lanham Act false advertising case.

motion to the extent it seeks to preclude Britven from testifying as to the applicable law, or how damages legally may be calculated.

This does not mean, however, that Britven's corresponding criticisms of Gorowsky's report are inadmissible as a matter of law. As noted above, Britven is permitted to point out what factors Gorowsky did or did not consider in his analysis, and whether any assumptions underlying Gorowsky's opinions are borne out by the evidence presented at trial. Provided he does not offer opinions on whether Gorowsky's approach is legally permissible, the Court cannot say that Britven's testimony in this area would be of no assistance to the Court in fashioning an appropriate award of damages, if any.

For similar reasons, the Court will not preclude Britven from offering his calculation of C2R's alleged unjust enrichment based on a "cost savings" approach. Although it is far from certain whether Britven's approach is consistent with 15 U.S.C. § 1117(a), Verde has provided the Court with no binding authority to compel a finding that the approach is wholly improper. While the Court ultimately may find Britven's approach to be legally flawed, it will reserve ruling on the matter until it has the benefit of a complete trial record and, if necessary, additional briefing from the parties. *See In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006) ("[W]here the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702."); *Mintel Int'l Grp., Ltd. v. Neergheen*, 636 F. Supp. 2d 677, 682–83 (N.D. Ill. 2009) ("[T]he judge in a bench trial may choose to allow the presentation of borderline testimony, subject the testimony to the rigors of cross-examination, and decide later whether the testimony is entitled to some consideration or whether it should be excluded as irrelevant, unreliable, or both.").

## ORDER

For the foregoing reasons,

IT IS THEREFORE ORDERED that C2R's motion to preclude Donald Gorowsky from testifying about C2R's state of mind is GRANTED.

IT IS FURTHER ORDERED that Verde's motion to exclude certain opinions of Thomas Britven is GRANTED in part and DENIED in part.

Dated: March 30, 2021

By the Court:

Beth E. Hanan
United States Bankruptcy Judge