IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    C2R Global Manufacturing, Inc.,      Case No. 18-30182-beh

    Debtor.      Chapter 11

**MEMORANDUM ORDER ON C2R'S LIMITED OBJECTION
TO THE CLAIM OF POP-SOLUTIONS, LLC**

    Debtor C2R Global Manufacturing, Inc. has filed a limited objection to the amended claim of POP-Solutions, LLC (Claim No. 2-2). POP's claim is based on a prepetition arbitration award against C2R in the amount of $977,377.14. In November 2018, POP filed its initial claim in the amount of $981,533.64, which consisted of the amount of the arbitration award, plus $4,156.50 in prepetition attorneys' fees. *See* Claim No. 2-1. In May 2021, POP amended its claim to add post-petition attorney fees of $34,896.00. According to the amended proof of claim, such fees are authorized under Wis. Stat. § 134.93(5), which imposes liability on C2R for "all actual costs, including reasonable actual attorney fees, incurred by [POP] in . . . collecting on" its arbitration award.[1]

    C2R objects to the allowance of POP's post-petition attorneys' fees on two grounds. First, according to C2R, 11 U.S.C. § 506(b) serves to disallow an unsecured creditor's claim for post-petition attorneys' fees as a matter of law. Second, even if § 506(b) does not serve to disallow the claim, not all of the $34,896.00 POP incurred in post-petition fees are for work that can be categorized as "collection efforts" under state law—specifically, the fees related to the deposition of POP's principal in C2R's bankruptcy litigation with creditor Verde Environmental Technologies, Inc. which, by C2R's count, total $9,938.50.

---

[1] The arbitration award itself appears to include a typographical error, referring to Wis. Stat. § 134.93(6), which does not exist, in quoting the language of Wis. Stat. § 134.93(5).

For the reasons that follow, the Court will overrule C2R's objection in part, and disallow $4,969.25 of POP's claimed post-petition attorneys' fees.

## DISCUSSION

**A.    11 U.S.C. § 506(b) does not serve to disallow an unsecured creditor's claim for post-petition attorneys' fees.**

In its claim objection, C2R cites to only 11 U.S.C. § 502 as the "applicable law." ECF No. 404, at 4. Section 502(a) provides that a claim is deemed allowed unless a party in interests objects, while section 502(b) governs the resolution of a claim objection: if a claim objection is made, "the court, after notice and a hearing, shall determine the amount of such claim . . . and shall allow such claim in such amount, except to the extent that" one of nine circumstances applies. 11 U.S.C. § 502(b). C2R initially did not identify any of the exceptions enumerated in section 502(b), but later invoked section 502(b)(1), incorporating section 506(b). *See* ECF No. 407, at 2. Section 502(b)(1) disallows claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law . . . ." C2R asserts that section 506(b) is such "applicable law."

Under section 506(b), which governs the secured status of claims, an over-secured creditor may recover post-petition attorneys' fees and interest as part of its secured claim. That provision of the Code reads:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b). The negative implication of section 506(b), according to C2R, is that post-petition attorneys' fees are not allowed in any other circumstances—*e.g.*, when a creditor holds an *unsecured* claim. *See* ECF No. 407, at 2–3 ("Accordingly, § 506(b) of the Bankruptcy Code *only* applies to oversecured creditors, and thus, unsecured creditors are not entitled to collect their post-petition fees.") (emphasis in original).

As further support, C2R identifies four additional sections of the Code in which C2R says "Congress has expressed its intent to award postpetition attorneys' fees," citing section 330 (permitting a court to award reasonable attorney's fees incurred during the bankruptcy by the trustee, an authorized committee, or the debtor); section 503 (allowing, as an administrative expense, reasonable compensation for attorney services to the extent such services benefitted the estate); section 362(k) (providing for "actual damages, including attorneys' fees" to an individual injured by an automatic stay violation); and section 523(d) (providing for an award of reasonable attorney's fees for a successful debtor in certain nondischargeability actions). C2R concludes: "Because no provision of the Bankruptcy Code permits an unsecured creditor to recover its post-petition legal fees from the estate, unsecured creditors, like [POP], have no clear entitlement to post-petition legal fees." *Id.* at 3 (citing *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 372–73 (1988)).

POP responds that C2R's argument is foreclosed by the Supreme Court's 2007 decision in *Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.,* 549 U.S. 443 (2007), which POP describes as unanimously holding that "an unsecured creditor can recover post-petition attorney fees when allowed by state law, unless such fees are specifically excluded by the Bankruptcy Code." ECF No. 405, at 2. In *Travelers*, the Supreme Court overturned a Ninth Circuit judge-made rule—the *Fobian* rule—that served to disallow contract-based claims for post-petition attorney's fees incurred litigating issues "peculiar to federal bankruptcy law," *see Fobian v. Western Farm Credit Bank (In re Fobian)*, 951 F.2d 1149, 1153 (9th Cir. 1991), as having no basis in the Code. *Travelers*, 549 U.S. at 452. In doing so, the Supreme Court reaffirmed its general presumption that "claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed," citing 11 U.S.C. § 502(b). *Id.*

Notably, the Supreme Court expressly declined to address the argument C2R now makes—that section 506(b) categorically disallows unsecured claims

for post-petition attorney's fees—because that issue was not raised properly before the lower courts. The Supreme Court concluded:

> [W]e express no opinion with regard to whether, following the demise of the *Fobian* rule, other principles of bankruptcy law might provide an independent basis for disallowing Travelers' claim for attorney's fees. We conclude only that the Court of Appeals erred in disallowing that claim based on the fact that the fees at issue were incurred litigating issues of bankruptcy law.

*Id.* at 456.

Nevertheless, in light of *Travelers*' directive that otherwise enforceable claims in bankruptcy should be allowed unless "expressly disallowed" by the Code, all three of the Circuit Courts of Appeal to have confronted this precise question since 2007 (the Ninth, Second, and Fourth) have concluded that section 506(b) is not the "express disallowance" *Travelers* requires. *See SNTL Corp. v. Ctr. Ins. Co. (In re SNTL Corp.),* 571 F.3d 826, 841–43 (9th Cir. 2009) ("[W]e reject the argument that section 506(b) preempts postpetition attorneys' fees for all except oversecured creditors. . . . [T]he allowance functions of section 506(b) and 502(b) have been incorrectly conflated. Section 502(b), which applies to claims generally, does disallow unmatured interest (*see* 11 U.S.C. § 502(b)(2)); it does not specifically disallow attorneys' fees of creditors or certain other charges. Section 506(b), on the other hand, specifies what may be included in a secured claim."); *Ogle v. Fid. & Deposit Co. of Md.,* 586 F.3d 143, 147–48 (2d Cir. 2009) ("As *Travelers* makes clear, the question is whether the Code *disallows* post-petition attorneys' fees, and does so expressly. It was therefore decisive in *Travelers* that 'the Code says *nothing* about unsecured claims for contractual attorney's fees incurred while litigating issues of bankruptcy law.' And while *Travelers* declined to address section 506(b) (because the parties had not raised the issue below), it is decisive here that the Code says nothing about such fees incurred litigating things *other* than issues of bankruptcy law. . . . Accordingly, we hold that section 506(b) does not implicate unsecured claims for post-petition attorneys' fees, and it therefore interposes no bar to recovery.") (internal citations omitted); and *Summitbridge*

*Nat'l Invs. III, LLC*, 915 F.3d 288, 294–95 (4th Cir. 2019) ("The *Travelers* Court made clear that claims enforceable under state law are presumed allowable, and that this presumption may be overcome only by an *express* disallowance. And § 506(b) never mentions, let alone expressly disallows, unsecured claims for post-petition attorneys' fees. A section that is 'completely silent with regard to the allowance/disallowance issue' at hand, cannot rebut the *Travelers* presumption. . . . Section 506(b) has nothing to do with the allowance or disallowance of claims. That function, as described above, is performed by § 502, aptly titled '[a]llowance of claims or interests.' What § 506 is concerned with, as its title makes equally clear, is the 'secured status' of claims already allowed or presumed allowed. . . . [U]nder *Travelers*, the question before us is whether there is anything in § 506(b) that could be deemed an express disallowance of unsecured claims for post-petition attorneys' fees. Like the Second and Ninth Circuits, we think there is not.") (internal citations omitted).

The Seventh Circuit's decision in *In re Sokolik*, 635 F.3d 261 (7th Cir. 2011), which POP also cites, provides further instruction here. In *Sokolik*, the court relied on *Travelers* to affirm a bankruptcy court's award of post-petition costs and attorney's fees to an unsecured creditor. 635 F.3d at 267. Although the Seventh Circuit was not asked to address section 506(b) specifically, it affirmed the lower court's award of post-petition attorneys' fees after "[f]inding no applicable exception in the Bankruptcy Code" to prohibit the allowance of the fees. *Id. Sokolik*, while not dispositive on the question presented, lends strong support to POP's argument.

In short, the Court finds the reasoning in *SNTL Corp., Ogle*, and *Summitbridge* persuasive, and concludes that the Seventh Circuit likely would reach the same result if presented directly with the question at issue here: whether section 506(b) disallows unsecured creditors' claims for post-petition attorney's fees otherwise enforceable under contract or state law. The Court also adopts the logic of the Ninth, Second, and Fourth Circuits in rejecting C2R's reliance on other sections of the Code that do not deal with the question

of the *allowance of claims*—such as §§ 330, 503, 362(k) and 523(d)—as well as *Timbers. See, e.g., SNTL Corp.*, 571 F.3d at 844; *Ogle*, 586 F.3d at 148; *Summitbridge*, 915 F.3d at 295. Because section 506(b) does not "expressly" disallow POP's otherwise enforceable claim for post-petition attorney's fees under state law, the Court overrules C2R's objection on this basis.

**B. POP may recover a portion of its post-petition fees related to the deposition of its principal as "collection" costs.**

C2R's alternate argument is that not all $34,896.00 of POP's claimed post-petition attorneys' fees are costs incurred to "collect" its arbitration award, and therefore are not authorized under the applicable state law, Wis. Stat. § 134.93(5). In its initial claim objection, C2R does not quantify the amount of such fees, stating only: "[T]he Disputed Claim includes attorney fees to defend the deposition of Claimant's principle in a case unrelated to the arbitration or collecting the award. Rather, they were incurred because the Claimant was a witness that needed to be deposed in an unrelated matter. There is no basis for the Debtor to pay them." ECF No. 404, at 5. In a later submission, C2R quantifies the amount at issue as $9,938.50 (although still does not identify specific billing entries included in this amount), and again refers to "the deposition of Claimant's principal in an unrelated patent litigation." ECF No. 407, at 5–6.

Neither party provides any further details about this mystery deposition. From the Court's review of the billing statement attached to POP's amended proof of claim, as well as the record in this case, the Court is left to deduce that the deposition at issue is not, in fact, wholly unrelated to this case; instead, it appears to be the deposition of Kathy Wille, a former sales representative of C2R, which was conducted in April 2020 in connection with Verde's allegations concerning the literal falsity of C2R's advertising, on which Verde's proof of claim in this bankruptcy case is based.[2]

---

[2] The patent infringement claim, which originally was a part of Verde's proof of claim, was resolved after extensive briefing, a decision by this Court, and the parties' settlement. *See* ECF No. 205, Motion to Approve Partial Settlement (March 27, 2020).

Nor does either party provide the Court with any authority on the scope of what qualifies as a collection cost under Wis. Stat. § 134.93(5). POP explains why it views the fees incurred in relation to the deposition as collection costs under the statute as follows:

> POP-Solutions viewed Verde's $6.8 million contingent claim (Claim 6-1) as a threat to Debtor's solvency and thus a threat to POP-Solutions' ability to collect on the Arbitration Award at all. Indeed, the time entries submitted in support of POP-Solutions' Amended Claim show that POP-Solutions' counsel worked closely with C2R's counsel in connection with the deposition. As such, these attorney fees were also incurred in connection with POP Solutions' efforts to collect the Arbitration Award and fall within Wis. Stats. § 134.93([5]).

ECF No. 405, at 3–4. C2R counters:

> While it may be true that the size of Verde's contingent claim had implications for the Debtor's bankruptcy proceeding, the deposition of Claimant's principal in an unrelated patent litigation served only as a fact-finding tool. . . . Therefore, the deposition of the Claimant's principal itself could not refute Verde's claim or otherwise assist the Claimant in collecting proceeds from the Debtor, and this portion of the Claimant's claim must be denied.

ECF No. 407, at 5–6.

In the absence of any dispositive guidance on the issue, the Court concludes that both parties are partially correct. Although POP's counsel would have been required to attend the deposition of its principal regardless of whether POP was attempting to collect its arbitration award from C2R, POP's conduct in preparing for the deposition—hand-in-hand with C2R's special counsel, as reflected in the billing statement—went above and beyond what is customarily required in such situations. There is no question that Ms. Wille's testimony was important to C2R's efforts to defend itself against Verde's claims of false advertising. In objecting to Verde's motion for partial summary judgment on the issue of literal falsity, C2R relied on a number of emails between Ms. Wille and other of C2R's employees or customers, as well as Ms. Wille's deposition testimony itself. *See* ECF No. 273, at 18 ("Customers likely assumed smaller pill sizes because, as C2R's lead sales representative testified,

200 mg is 'awful high' when considering the controlled substances likely to be disposed in Rx Destroyer.") (citing Ms. Wille's deposition testimony). And POP shared an interest in C2R's successful defense, because the larger Verde's claim in relation to POP's, the lesser chance of POP collecting its claim in full.

In the circumstances, the Court concludes that POP is entitled to recover as a "collection cost" half of the $9,938.50 that C2R asserts should be disallowed, which results in a disallowance of $4,969.25 in post-petition attorneys' fees. This amount is sufficient to cover the $3,555 that POP incurred in defending the deposition itself, along with several hours of additional time necessary to prepare for the deposition.

## ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that C2R's limited objection to the claim of POP-Solutions, LLC is sustained in part and overruled in part. POP-Solutions, LLC's amended claim (Claim No. 2-2) in the amount of $1,016,429.64 shall be reduced by $4,969.25, leaving POP-Solutions with an allowed claim of $1,011,460.39.

Dated: August 4, 2021

By the Court:

Beth E. Hanan
United States Bankruptcy Judge